**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FRIDRIK THOR GUDMUNDSSON, et al.,

    Plaintiffs,

v.                                                                                            Civil No. 03-1386 WJ/KBM

JULIES AIRCRAFT SERVICE, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION FOR SECURITY FOR COSTS**

THIS MATTER comes before the Court upon a Motion for Security for Costs, filed on June 17, 2004 by Defendants Julies Aircraft Service, Inc. (**Doc. 12**).[1]  Plaintiffs filed this case on behalf of five passengers who died as a result of an offshore plane crash that occurred in Iceland on August 7, 2000, killing the pilot as well as all passengers.  Plaintiffs are all resident citizens of Iceland.  Defendants are corporate entities or persons who are involved in some way with the inspection, maintenance, servicing, rebuilding or certifying of the Cessna plane that went down, or who are in the business of transporting passengers.  Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken in part and will be granted in part.

**Background**

**I.     Factual History**

On August 7, 2000, Mohamed Josef Douglas was transporting himself and five fare-paying passengers from Westman Islands to Reykjavik, Iceland.  The aircraft was owned and operated by Co-Defendants Otteson, LIO,[2] and Air Charter Iceland.  Douglas was an employee of

---

[1]  Julies Aircraft Service Inc., does business under several other names, including JAS, Inc.

[2]  Plaintiffs are suing Isleifur Ottesen individually and d/b/a "LIO ehf."

Co-Defendants Otteson, LIO, and Air Charter Iceland. The aircraft, a six-seat high-wing 1973 Cessna T210L, Centurion II model, successfully flew from Westman Islands to near Reykjavik Airport, but was instructed to hold short of entering the traffic pattern.  Complaint, ¶¶ 2.04, 2.07.  After being cleared for approach to Reykjavik Airport, as the aircraft was on final approach, it was given instructions not to land, and instead to fly a "go-around."  The aircraft pulled up to an altitude of 100 feet above the threshold of the runway and started a "go-around."  The pilot retracted the landing gear and executed a "go-around."  When the aircraft had climbed to an altitude of 500 feet and was flying straight and level, suddenly and without warning, the engine lost power and stopped.  The plane then rolled over to the left and steeply spiraled into the sea about 350 meters offshore.  ¶ 2.08.  The aircraft broke up when it hit the water, and sank to the bottom at a depth of approximately 6 meters.  ¶ 2.09.  Three of the passengers initially survived the crash, but the pilot and two passengers died shortly after the crash.  The surviving passengers subsequently died. ¶ 2.12.

The complaint states causes of action under vicarious liability, negligence, fraud and misrepresentation, product liability, negligent infliction of emotional distress, conspiracy and spoliation of evidence (the aircraft engine).  In short, Plaintiffs are suing the various Defendants because of their alleged willful and reckless failure to properly rebuild, recertify, inspect and maintain service of the Cessna aircraft, the aircraft engines, the aircraft systems, and the aircraft component parts.  <u>See</u>, <u>e.g.</u>, Complaint, ¶ 3.0510.   Some of the Defendants are being sued with regard to the pilot's alleged conduct, in that they failed to properly qualify and monitor pilots, to monitor the hours flown by the pilots, and to have an adequate safety program.  The requested relief runs the gamut of damages available under tort law.  Complaint, ¶¶ 3.101 - 3.106.

**II.     Postural History of Case**

Plaintiffs filed the complaint for personal injury and wrongful death in the New Mexico State Court in the County of Dona Ana (Third Judicial District) on August 5, 2003. Defendants Julies Aircraft Service, Inc. ("JAS Defendants" or "Defendants" for purposes of this motion) removed the case to federal court on December 2, 2003 based on diversity jurisdiction under 28 U.S.C. § 1132.

According to the JAS Defendants, almost a year before this lawsuit was filed, Plaintiffs filed an identical lawsuit based on the same set of facts and with the same parties (minus one Plaintiff), in the District Court of El Paso County, Texas (327th Judicial District). After filing the present lawsuit, Plaintiffs settled with all served Defendants except the JAS Defendants. Mot., ¶¶ 3, 8. It is not clear whether Defendants are the sole Defendants remaining in the action. The Court's docket indicates that some parties have been terminated, but others, e.g., Goldstar Aviation and Accessories, Inc., Jackson Aviation Repairs, Inc., and other individual defendants, have not been terminated, are not represented by counsel, and may not have been served.

## Discussion

Defendants request that Plaintiffs be required to post security for costs in the amount of $50,000.00, to cover impending discovery they expect to be costly. They point out that recovery of costs at the conclusion of the case would be difficult because Plaintiffs are not residents of the United States and have no assets in this country. Defendants are also confident that Plaintiffs' claims against them are meritless. Plaintiffs do not dispute Defendants' statements regarding assets and citizenship.

Plaintiffs, having filed cases in two different venues of federal court, can hardly expect Defendants to defend this case without incurring considerable costs. It seems undeniable that there will be legitimate costs that go with defending a case such as this, and equally undeniable

3

that if Defendants prevail, they will have difficulty in collecting costs. Plaintiffs do not challenge the need for interpreters, for translation of documents, or for travel to and from Iceland – they only challenge the extent of those needs.

There is another reason why Plaintiffs oppose this motion -- one that makes the Court sit up and take note. They believe that Defendants' request for a security bond is made in bad faith, as part of an effort to drive up the costs of litigation for Plaintiffs, and that Defendants have not shown that the requested amount of security is reasonable or necessary. According to Plaintiffs, defense counsel's conduct displays an intention to protract the litigation as much as possible, and to make it as expensive as possible for them, such as planning more trips than necessary to Iceland to complete depositions. They claim that defense counsel Don Swaim had the opportunity to depose Plaintiffs in Iceland while he was there for depositions of non-party witnesses. When some of those witnesses decided not to be deposed, Mr. Swaim elected to play golf instead, even though an interpreter and a U.S. court reporter were available. Mr. Swaim was also heard to say that he was going to make Plaintiffs "spend every nickel" they recovered from settlement on this case. Ex. 1, Peckham Affidavit.[3]

While the Court does not take lightly such allegations of unprofessional conduct, they are not critical to the issue of whether Plaintiffs should be required to post a bond for costs, although they could be relevant to the amount of the bond, and perhaps later to the amount of costs awarded should Defendants prevail. The appropriate time to deal head-on with challenges to the nature and amount of costs is after a party has submitted a bill of costs, when that party is

---

[3] Mr. Swaim's comment was apparently the subject of some discussion in the other case pending in state court in Texas. Mr. Swaim explained to the court there that he had only stated that litigation was going to be expensive for all parties. Mr. Peckham dismisses Mr. Swaim's response as "fabricated." Ex. 1 at 2.

4

required to itemize those costs and represent that the costs were necessary to the litigation. See, D.N.M.LR-54.1. A party opposing the submitted bill can present objections at that time. I will assure counsel on both sides that allegations of unprofessional conduct and excessive costs will be closely examined at the appropriate time.

There is still the question of whether the imposition of a security bond is appropriate here, and if so, what amount of bond would afford reasonable security for Defendants while not posing an undue burden for Plaintiffs.

A.      Whether Plaintiffs Should be Required to Post Bond for Costs

There is no statute or rule which specifically authorizes a federal court to require the posting of a bond to secure the payment of costs to a party should that party prevail. Anderson v. Steers, Sullivan, McNamar & Rogers, 998 F.2d 495, 496 (7th Cir. 1993); 10 Wright, Miller & Kane, Federal Practice & Procedure, Civil 2d § 2671 (1998) ("Whether plaintiff may be required in order to proceed with an action to post security for the costs the opposing party may incur is not covered by Rule 54(d). Indeed, there is no general federal statute or civil rule governing the matter").[4] However, federal courts may require such bonds as an exercise of its inherent authority. In re Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1121 (9th Cir. 1987); Gainey v. Brotherhood of Ry. and S. S. Clerks, Freight Handlers, Exp. and Station Emp.,34 F.R.D. 8, 12 (E.D.Pa., 1963) (applications for security for costs generally based on "some provision of a statute or rule of court, although broad assertions of a general discretionary power to require security are frequently made"); Anderson, 998 F.2d at 496 (power to tax costs

---

[4] As noted in Wright & Miller, there are some federal provisions that deal with security for costs in a particular context, such as Rule 65(c), which requires security for costs and damages when either a restraining order or a preliminary injunction is to be issued; and 28 U.S.C.A. § 1915 which authorizes the court to allow a party proceeding *in forma pauperis* to do so without posting any security. 10 Wright & Miller, Fed. Prac. & Proc. § 2671, n.1.

implies court's "ancillary power to take reasonable measures to ensure that the costs will be paid") (citing First and Fifth Circuits, and other courts); Wright, Miller & Kane, Fed. Practice & Procedure, § 2671 (trial courts "may regulate their practice in any manner not inconsistent with" federal civil rules).

This Court has a local rules which addresses "bonds and other sureties," but it does not include a bond provision for a non-resident party. See, D.N.M.LR-65.1; cmp., Hull v. Municipality of San Juan, 230 F.Supp.2d 239, (D.Puerto Rico, 2002) (imposition of security bond under district court's local rules was reasonable from perspective of both parties), rev. on other grds., Hull v. Municipality of San Juan, 356 F.3d 98 (1st Cir. 2004).  In the absence of a federal rule or statute, or local rule dealing with the posting of a bond in this situation, the Court may look to law of the forum state, i.e., New Mexico, for guidance. Merrill Lynch Relocation Management, Inc., 812 F.2d at 1121 (district court typically follows the forum state's practice, particularly when a party is a nonresident) (citing 10 Wright, Miller & Kane, Fed. Practice & Procedure § 2671).  New Mexico has a statute which generally addresses security bonds. See, N.M.S.A. § 39-2-14 (2004). This statutory provision states that "in all cases the plaintiff, on motion of any person interested in the suit or costs, may be ruled to give security for costs, and in case he shall fail so to do on or before the first day of the next term after such rule, the case shall abate."  See, Lebeck, State ex rel., v. Chavez, 45 N.M. 161, 113 P.2d 179 (1941) (the granting or denying of motion to require plaintiffs to give security bond for costs is an exercise of judicial discretion upon a material issue).

The decision whether to impose a bond is made on an individual case basis, and various factors can be considered, such as: ability to pay, presence within the United States, merit of the underlying claims, extent and scope of discovery, and compliance with past court orders.

Herbstein v. Bruetman, 141 F.R.D. 246, 247 (S.D.N.Y.,1992) (citing Oilex A.G. v. Mitsui & Co. (U.S.A.), 669 F.Supp. 85, 88 (S.D.N.Y.1987)) (extensive discovery outside of country, need to translate evidence, foreign party with no assets).  Non-resident status is a significant factor that weighs heavily in the balance, for the simple reason that without security, a prevailing defendant would ordinarily have no means of satisfying the judgment for costs in his favor.  Gainey v. Brotherhood of Ry. and S. S. Clerks, Freight Handlers, Exp. and Station Emp., 34 F.R.D. 8, 12 (E.D.Pa., 1963); Knight v. H.E. Yerkes and Associates, Inc., 675 F.Supp. 139, 142 (S.D.N.Y. 1987) (Plaintiff, who was resident of Thailand, required to file $15,000 bond for costs, pursuant to local federal rule and guidance found in state law requiring posting of security for costs, since if defendant prevailed, collection of costs would likely prove difficult in light of costs from number of depositions that would likely take place and location of some of those depositions).

      1.     *Merits of the Case*

In arguing that the imposition of a bond is appropriate, Defendants rely partly on the lack of merit in Plaintiffs' claims.  The JAS Defendants' position is that their sole relationship to the Cessna aircraft was an annual inspection that was completed over a year before the accident. Because they did not manufacture, sell, put into the stream of commerce, design or overhaul the aircraft in question or any component parts which caused the accident, Plaintiffs cannot establish liability.  Defendants also contend that Plaintiffs' efforts to connect Defendants with the cause of the accident are not consistent with the findings of "probable causal factors" issued by the report completed by the Icelandic Aircraft Accident Investigation Board ("IAAIB")  report.  While the report does mention that there may have been a failure by JAS to either test the gauges or post a placard on the aircraft when inspecting the aircraft in the United States, these were not listed as probable causes of the accident.  Ex. 13 at 13 & 27.   Rather, the "probable causal factors,"

7

designated by asterisks on the listed findings in the IAAIB report, were: engine fuel starvation, failure by aircraft "operator" to keep fuel and oil records in accordance with regulations; and pilot error in underestimating fuel consumption of the aircraft and overestimating fuel quantity in its tanks. Ex. 13 at 27.

Parties dispute the admissibility of the IIAIB report. The report contains a disclaimer which states that the purposes of the report is to identify factors contributing to aircraft accidents "for the sole purpose of preventing aircraft accidents from reoccurring and to encourage increased safety in aviation[,]" and that "the purpose is not to determine fault and/or responsibility." Ex. 13 at 2.[5] I make no pronouncement here as to the IIAIB report's integrity or admissibility. Nevertheless, it does suggest a weak causal connection between the annual inspection completed by Defendants a year prior to the accident (a fact that Plaintiffs do not seem to challenge) and the accident itself. As presented thus far, the merits weigh in favor of imposing the bond requirement. Having said that, I emphasize that the purpose of the Court's use of the IIAIB report is not to litigate the case on this motion, but only as an aid in deciding whether Plaintiffs should be required to post a security bond for costs.

2.   *Collection of Costs*

I need not dwell further on the merits of Plaintiffs' case, in light of a far better reason to require a bond. The Court is satisfied that, if they prevail, the JAS Defendants will indeed face some difficulty collecting costs. As I have noted, Plaintiffs do not dispute the fact that they have no assets in this country, and that Plaintiffs are not citizens of the United States and non-residents.

---

[5] Plaintiffs cite to 49 CFR 835.3(a)(2002) which precludes use or admission into evidence of Board Accident Reports "in any suit or action for damages arising from accidents." Ex. 1, ¶ 8. Defendants argue that by the reports own language, inadmissibility of such documents, concerns only evidence in criminal cases. Ex. E, P00137.

8

They also do not debate Defendants' representations that some depositions will likely require Defendants to travel outside of the country, and that a number of them will need to be taken.

Plaintiffs had reserved some of the settlement funds to cover the costs of litigating the case against the JAS Defendants. This amount, which was initially $50,000.00, has decreased to $30,000.00. Ex. 1, ¶ 5.[6] The existence of these reserved funds means that the imposition of a cost bond would not unduly prejudice Plaintiffs. See, e.g., Van Bui v. CHOP, 178 F.R.D. 54, 55 (E.D.Pa.1998) (court evaluates likelihood of a plaintiff's ultimate success and a plaintiff's ability to post security or pay costs in making its determination). By the same token, the decrease in value from the initial amount reserved advocates the need for these funds to be secured before they are further depleted.

In deciding whether a security bond is appropriate, this Court will follow the rationale expressed by Judge Posner in the Seventh Circuit case of Anderson v. Steers:

> No statute or rule, or decision of this circuit, expressly authorizes a court to require the posting of a bond to secure the payment of costs to a party should he prevail in the case. Nonetheless it seems to us, as it has seemed to the other courts that have addressed the question, that the power to tax costs implies the ancillary power to take reasonable measures to ensure that the costs will be paid. . . So if there is reason to believe that the prevailing party will find it difficult to collect its costs, the court can require the posting of a suitable bond.

998 F.2d at 496 (citing First and Fifth Circuits). Therefore, I find that it is reasonable to require Plaintiffs to post security for costs, since it would not unduly burden them, and Defendants would then be assured of being able to recoup at least some of the costs to which they would be entitled if they prevail in this action.

B.    Amount of Bond

---

[6] Plaintiffs state that the amount was decreased "by the request of the ad litem" and on other expenditures. Ex. 1, ¶ 5.

9

Having concluded that Plaintiffs should be ordered to post a bond, the amount of the bond remains to be decided. Defendants request an amount of $50,000.00, which they claim is not excessive in light of the double litigation of the same case in Texas and New Mexico, the residence of Plaintiffs, and the fact that they anticipate that the costs will actually exceed that amount.

   *1.     Basis for Taxable Costs*

N.M.S.A. § 39-2-14 provides authority for requiring the posting of a security bond, but does not elaborate on what items may be taxed as costs. Thus, the next question is where the Court should look in order to determine the amount of the bond. Federal courts sitting in diversity (as in this case) must first determine whether a particular matter is procedural or substantive. If the matter is procedural, then federal law applies, but if matter is substantive, then court follows the law of forum state. Boyd Rosene and Associates, Inc. v. Kansas Mun. Gas Agency, 174 F.3d 1115, 1120 (10th Cir. 1999).

Taxing of costs is a procedural matter. Id., 174 F.3d at 1128 n.13 (". . . it seems incontrovertible that costs are procedural") (citing Restatement (Second) of Conflict of Laws, § 122)); All West Pet Supply Co. v. Hill's Pet Products Div., Colgate-Palmolive Co.153 F.R.D. 667, 668 (D.Kan.,1994) (pursuant to "procedural rule," Fed.R.Civ.P. 54(d), "costs are generally allowed as a matter of course to the prevailing party unless the court otherwise directs"); Atchison Casting Corp. v. Dofasco, Inc., unpubl. opin., 1995 WL 655183 (D.Kan. 1995) (stating that under principles set forth in Erie v. Tompkins, 304 U.S. 64 (1938), costs are considered procedural) (citing 10 Charles Wright et al., Federal Practices and Procedure § 2669, and noting that conflict of laws analysis not required). Thus, if Defendants prevailed, they would be entitled

10

only to those costs allowable under federal procedural rules.[7]

Fed. Rule Civ.P. 54(d)(1) provides in relevant part that costs "shall be allowed as of course to the prevailing party unless the court otherwise directs." The allowance or disallowance of costs to a prevailing party is within the sound discretion of the district court. Jones v. Unisys Corp., 54 F.3d 624, 633 (10th Cir. 1995). However, absent some other explicit statutory or contractual provision, the costs a court may award under Rule 54(d) are limited by statute, viz., 28 U.S.C. § § 1821 and 1920. Thus, should Defendants prevail, they would be entitled only to those costs available under 28 U.S.C. §§ 1821 and 1920. West Virginia Univ. Hosp. Inc., v. Casey, 499 U.S. 83, 86 (1991); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440-42 (1987). Section 1920 itemizes allowable costs, and provides that

> A judge of clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Section 1821 describes per diem and mileage allowance for witnesses.

*2.     Allowable Costs for Security Bond*

Defendants are correct that costs for depositions, interpreters, translators and witness fees are taxable costs, but are overly optimistic about the amounts they would be entitled to if they

---

[7] Defendants rely on the New Mexico cost rule, N.M.R.A. Rule 1-054(D)(2001). Whether the federal or state cost rules are used turns out to make little difference, since the New Mexico and federal rules are very similar. For instance, both limit expert witness fees to per diem and mileage, and do not allow fees for services; and both tax costs of depositions within certain instances. N.M.R.A. Rule 1-054(D)(2).

11

prevailed. Costs for the court reporter and transcripts are taxable under § 1920(2), but under our more stringent local rule, only where the deposition is "reasonably necessary to the litigation." A deposition is "reasonably necessary to the litigation" when either a substantial portion of the deposition is admitted into evidence or used at trial for impeachment purposes, when the deposition is used by the Court in ruling on a motion for summary judgment, or "when the Court so determines." D.N.M.LR. 54(b)(2)(A)(B)(C); see, Hernandez v. George, 793 F.2d 264, 268 (10th Cir. 1986) (noting that "more stringent local district court rule" allows costs only for depositions received in evidence or used by the court in ruling upon a motion for summary judgment, and finding that case presented "no special circumstances suggesting that the local rule should not be applied") (New Mexico district court rule); Marathon Ashland Pipe Line LLC v. Maryland Cas. Co. 243 F.3d 1232, 1253 (10th Cir. 2001) (local rule empowers district court to grant costs only in "three separate situations, all of which involve using evidence from the deposition at trial") (Wyoming district court rule).

### a. Depositions and Interpreter Services

Defendants plan on taking numerous depositions, some out of country in Iceland, Belize, Canada and England, anticipating that 15 depositions will be taken over the next 120 days. Mot. at 12. They estimate the cost to be about $25,000.00, with $2,900.00 expended thus far. Interpreter services are expected to run about $5,000.00 just for Plaintiffs.[8] Given the limited categories under which the local rules allow depositions to be taxed as costs, $25,000.00 for deposition costs is excessive and premature. Cmp., e.g., Tilton v. Capital Cities/ABC, Inc.,115 F.3d 1471, 1473 (10th Cir. 1997) (taxing transcription costs associated with depositions

---

[8] Defendants expect the cost of depositions and interpreter services just for the Plaintiffs to run $15,000.00. Mot. at 12. The one Plaintiff who has already been deposed speaks fluent English, but the others will require interpreters. Ex. F (Swaim Aff.), ¶ 5.

submitted by parties in support of summary judgment motions was not abuse of discretion where district court expressly stated that it relied on all depositions submitted in determining whether summary judgment was appropriate).

Moreover, as mentioned earlier, Plaintiffs claim that they were forced to travel to the United States for depositions, at their own expense, when they were willing to have depositions conducted in Iceland at defense counsel's convenience while they were in that country taking other depositions. As a general rule, it is not burdensome to require a plaintiff to travel to the place where they filed suit. See, e.g., Matthews v. Watson ,123 F.R.D. 522, 523 (E.D.Pa.,1989) (general obligation of plaintiffs to travel at their own expense to deposition or examination by defendants in district in which plaintiffs had filed suit, absent "evidence of unreasonable hardship or exceptional circumstances"); Fed.Rules Civ.Proc.Rule 35(a). What *is* disturbing is Plaintiffs' allegation of what I consider to be highly unprofessional conduct, i.e., avoiding deposing Plaintiffs at a time convenient for both parties, for the sole purpose of escalating Plaintiffs' litigations costs. If there is any basis to these assertions, they would certainly be factored into the reasonableness of any costs for depositions or travel submitted by the JAS defendants should they prevail -- whether or not these depositions qualify as taxable costs under the local rules.[9]  For now, given speculative nature of necessity of these depositions to the litigation, Court will include $8,000.00 to secure taxable costs for depositions and $2,000.00 for interpreter services.

    **b**.    **Translation Costs**

---

[9] Interpreter services taxable under the federal rules come under § 1821 and § 1827, providing for use of interpreters "in judicial proceedings." The services requested by Defendants here are in connection with the taking of depositions.

Defendants expect translation of documents to cost at least $10,000.00. Mot. at 13.[10] Plaintiffs claim that hundreds of pages of these documents were produced by the Plaintiffs themselves, already translated in both English and Icelandic, and that Mr. Swaim decided to have them re-translated at his clients' expense. Ex. 1, ¶ 6. Defense counsel does not counter these contentions, nor provide an explanation as to why some of these documents needed to be translated a second time. Costs for translation of documents in this case would seem to be a certainty. However, without knowing how many of these documents were re-translated, or why the parties could not stipulate to the authenticity of the original translation, I will lean on this side of caution, and set aside $3,000.00 for this category.

### c.     Expert Witness Fees

Defendants anticipate costs for expert witnesses to exceed $50,000.00. Witness fees, including mileage and subsistence, are allowable under § 1920(3) pursuant to 28 U.S.C. § 1821. Additional expert witness fees are not recoverable under § 1920. See Ramos v. Lamm, 713 F.2d at 559; cited in Gray v. Phillips Petroleum Co., 971 F.2d 591, 593 (10th Cir. 1992); Crawford Fitting, 482 U.S. 437, 439 (1987). Further, fees for witnesses that do not appear in court are not allowable costs under 28 U.S.C. § 1920. Jones v. Unisys Corp., 54 F.3d 624, 633 (10th Cir. 1995), citing Crawford Fitting, 482 U.S. at 445. Only fees for expert witnesses appointed by the Court are compensable under § 1920(6); otherwise, an expert witness "will be paid the same fee as a lay witness." D.N.M.LR-Civ. 54.2(c)(2).[11]

---

[10] Elsewhere, Defendants claim that the total cost of interpreted documents is almost $17,000.00." Ex. F, ¶ 4.

[11] New Mexico rules are similar, limiting expert witness fees for services as limited by § 38-6-4(B): "Witnesses shall be allowed no fees for services, but shall receive per diem expense and mileage at the rate specified for nonsalaried public officers as provided in the Per Diem and Mileage Act for that time in which attendance is required, with certification of the clerk of the

Section 1821 provides that "[a] witness shall be paid an attendance fee of $40.00 per day for each day's attendance," plus mileage allowance that is made on "the basis of a uniformed table of distances adopted by the Administrator of General Services."  1821(b) and (c)(2); see also, D.N.M.LR-Civ. 54.2(c)(1).  Recognizing the limitations on reimbursement of Defendants' expert witnesses under § 1821, I find that $5,000.00 is a more appropriate estimation of the amount which should be secured for this category of costs.

### d. Other miscellaneous costs

Defendants estimate costs for in-house photocopies and copy centers, printing and document production, and service of subpoenas, at $6,800.00.  Ex. 4 (Swaim Aff.), ¶ 4.  Costs of service of subpoenas are taxable under § 1920(1); see, e.g., Antonson v. United Armored Services, Inc., unpubl. opin., 2002 WL 908424 (N.D.Ill.,2002) ("subpoena fee is taxable under § 1920(1) unless it is challenged as unreasonable or unnecessary").  Copying costs, which would include document production, are taxable, but are subject to the qualification that the copies are for "papers necessarily obtained for use in the case."  § 1920(4); see, e.g., State of Kan. ex rel. Stephan v. Deffenbaugh Industries, Inc.154 F.R.D. 269, 270 (D.Kan. 1994) (copies not taxable where not "reasonably necessary" to case); James v. Coors Brewing Co. 73 F.Supp.2d 1250, 1260 (D.Colo.,1999) (investigative materials generated by defendant regarding employment files were not taxable where there was showing that they were "necessarily obtained for use in this case").

Defendants do not offer an anticipatory breakdown of costs in the subcategories included under § 1920(1), nor do they offer any explanation as to the necessity of the copying to this litigation, which is a prerequisite to reimbursement for these items.  Cmp., James v. Coors, 73

---

court."  See N.M.R.A. 1-054(D)(2)(g).

F.Supp.2d at 1260 (aggregate documents that were not separated out for costs for copies allegedly used in questioning witnesses and as exhibits at trial, , were not "necessarily obtained for use" in case).

If it is premature to require Defendants to separately itemize anticipated costs, or to argue the necessity of the various documents that were copied, it is also premature for the Court to assume that Defendants will eventually prove that all the copied documents were in fact necessary for use in this case.   Therefore, to minimize a possible overinflation of taxable costs under § 1920(1) and (4), I find that $2,000.00 sufficiently covers taxable costs under these provisions for purposes of a cost bond.

## Conclusion

In sum, I will impose a requirement that Plaintiffs post a security bond in the amount of $20,000.00, representing $8,000.00 for deposition costs; $2,000.00 for interpreter services; $3,000.00 for translation fees; $5,000.00 for witness fees; and $2,000.00 for copying costs and other miscellaneous costs under § 1920(1) & (4).  The amount of the bond will provide Defendants some security for recoupment of costs related to this litigation while providing an incentive to contain costs as much as possible.  At the same time, the amount of the bond is not burdensome to Plaintiffs, especially considering that all but one of the Plaintiffs apparently has the financial wherewithal to wage battle against Defendants in two forums.

Defendants request that Plaintiffs "give security for costs already incurred and make periodic deposits of cash sufficient to offset the charges and expenses that will accrue in the future." Mot. at 13.   This method may not be feasible, given the fact that Defendants are not getting the full amount of the security requested.  In any event, the Court sets the bond amount at $20,000.00.

Plaintiffs' are directed to post the required bond within thirty days of the entry of this Memorandum Opinion and Order.  Failure to post such a bond may result in sanctions, including the dismissal of Plaintiffs' claims against the JAS Defendants.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Security for Costs, filed by Defendants Julies Aircraft Service, Inc. **(Doc. 12)** is hereby GRANTED IN PART, in that Plaintiffs give security for costs in the amount of **$20,000.00**.

_____
UNITED STATES DISTRICT JUDGE